JASON D. RUSSELL (SBN 169219)
jason.russell@skadden.com
HILLARY A. HAMILTON (SBN 218233)
hillary.hamilton@skadden.com
ADAM K. LLOYD (SBN 307949)
adam.lloyd@skadden.com
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
300 South Grand Avenue, Suite 3400
Los Angeles, California 90071-3144
Telephone:  (213) 687-5000
Facsimile:  (213) 687-5600

Attorneys for Defendants
BOARDRIDERS, INC., OAKTREE CAPITAL
GROUP, LLC, AND BOARDRIDERS IP
HOLDINGS, LLC

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| RIDER CLOTHING LLC,<br><br>               Plaintiff,<br><br>    v.<br><br>BOARDRIDERS, INC.; OAKTREE CAPITAL GROUP, LLC; BOARDRIDERS IP HOLDINGS, LLC,<br><br>               Defendants. | CASE NO.: 2:19-CV-4098-RGK-E<br><br>**DECLARATION OF DAVID TANNER IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**<br><br>Judge: Hon. R. Gary Klausner<br>Courtroom: 850<br>Hearing Date: July 27, 2020<br>Time: 9:00 a.m.<br><br>Discovery Cutoff:  June 16, 2020<br>Pretrial Conference:  August 31, 2020<br>Trial Date:  September 15, 2020 |

# DECLARATION OF DAVID TANNER

I, David Tanner, declare and state as follows:

1. I am the Chief Executive Officer of Boardriders, Inc., a position I have held since February 2018. Boardriders, Inc., Boardriders IP Holdings, LLC, and Oaktree Capital Group, LLC are Defendants in the above-captioned matter. I submit this declaration in support of Defendants' Motion for Summary Judgment. I make this declaration based on my own personal knowledge and based on review of company documents and business records and consultation with authorized company personnel, and if called as a witness, I could and would testify competently thereto.

2. In the early 1990s, Quiksilver was approached by a syndicate of Hawaiian businessmen and lawyers who had observed the growing presence of the brand in the surf shops of Waikiki, and proposed creating a licensed Quiksilver store there.

3. Quiksilver had concerns about losing control of the Quiksilver name if it licensed the name to an independent retailer. In order to preserve control of the name, Quiksilver came up with a retail concept for Quiksilver brands called "The Boardriders Club."

4. The Boardriders Club stores followed a formula featuring a mix of approximately 70% percent Quiksilver products and the remainder from local sources and surf-related accessories that Quiksilver did not produce, like surf leashes, shoes and jewelry.

5. Quiksilver called its stores "Clubs" because it wanted to present the brand in a surf cultural context that made customers feel at home, promoting the company's products while simultaneously celebrating the connection between the local surf culture and the Quiksilver brand.

6. Quiksilver opened the first "Boardriders Club" retail store in Waikiki, Hawaii in 1992.

7. Within a year of opening the Boardriders Club Waikiki store, Quiksilver opened five more Boardriders stores in the United States: in Seal Beach, Santa Cruz and

Laguna Beach in California, and Park City and Orem in Utah. The following year, another five Boardriders stores were added in the U.S. and three in Europe.

8. In 1996, the "Boardriders Club" wordmark was registered with the USPTO by Quiksilver.

9. Although the boardriders.com domain name was not registered with The Internet Corporation for Assigned Names and Numbers ("ICANN") until 2001, in the late 1990s the boardriders.com domain name was used to promote the Boardriders Club retail store in Laguna Beach, California, which sold Quiksilver and Roxy merchandise. Currently, no goods are available for sale on the boardriders.com domain name; the website provides links to the websites for Boardriders' brands, such as Quiksilver, Roxy, and DC Shoes.

10. In 1999, Quiksilver opened Boardriders Club stores in London and on the Champs Elysee in Paris.

11. In 2003, Quiksilver opened a flagship Boardriders Club store in Times Square.

12. In mid-June 2009, Quiksilver began updating their Boardriders Club store signage from this:



to this design,

BOARDRIDERS

which highlighted the "Boardriders" name—instead of Quiksilver—to better reflect the inclusion of all Quiksilver, Inc.'s brands, including the Roxy and DC Shoes brands. This signage is still used by Boardriders to this day on its storefronts—including in Malibu, California—and company offices. The Boardriders storefront in Malibu, California, uses only the Boardriders name and does not use a separate Boardriders logo on its signage.

2
TANNER DECL. ISO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

13. Throughout the 2000s and 2010s, Quiksilver continued opening Boardriders stores all over the world, which were widely covered in the media.

14. Boardriders stores feature a broad selection of products from Boardriders' core brands and, at times, a limited selection of products from other third-party brands.

15. The first Boardriders logo, used in the 1990s, was two crossed surfboards:



16. In July 2011, Simon Buttonshaw, a longtime Quiksilver artist, who had been with the company since at least 1980, and President of Quiksilver Europe, Pierre Agnes, began creating the Boardriders "TX" logo overseas.

17. The final 2011 "TX" logo was an update of the classic Boardriders logo, tilting the surfboards into an "X" and adding crossed snowboards in front of them in a "T" pattern:



18. After the TX logo was approved, Boardriders designed a product line in March 2012 using the new TX logo, which was first sold in September 2012.

19. No one at Quiksilver had ever seen or was aware of Plaintiff's Rider logo when the TX logo was updated.

20. Pierre Agnes succeeded Andy Mooney as Chief Executive Officer of Quiksilver in March 2015.

21. Quiksilver filed for Chapter 11 bankruptcy protection in the United States Bankruptcy Court for the District of Delaware in September 2015.

22. Oaktree Capital did not own Quiksilver until the bankruptcy proceedings completed. During the bankruptcy process, Oaktree Capital acquired a controlling ownership interest in Quiksilver, by converting Quiksilver debt that Oaktree owned into equity in the reorganized Quiksilver, Inc. Quiksilver emerged from bankruptcy in February 2016.

23. Throughout the history of the company, Quiksilver served as the corporate name for Quiksilver, Inc.'s family of brands, which included the Quiksilver brand as well as Roxy and DC Shoes.

24. In December 2016, Quiksilver CEO Pierre Agnes decided to change the corporate name of Quiksilver, Inc. to Boardriders, Inc.

25. Quiksilver, Inc. decided to rebrand itself as Boardriders, Inc., for two reasons: (1) the reorganized Quiksilver, Inc. had just emerged from Chapter 11 bankruptcy proceedings, so it decided to use its existing in-house Boardriders name as its new corporate name with the intent to distance itself from the name of the entity that just had previously filed for bankruptcy protection; and (2) Quiksilver was just one of three well-known brands that Quiksilver, Inc. owned at the time—Quiksilver, Roxy, and DC Shoes—and Mr. Agnes wanted the corporate name to reflect the entire family of brands, not just Quiksilver.

26. Quiksilver, Inc. chose the Boardriders, Inc. corporate name because Quiksilver had already been using the Boardriders name for years in the retail context to denote the Quiksilver family of brands, including Quiksilver, Roxy, and DC Shoes.

27. Oaktree Capital was not involved in Mr. Agnes' decision to change Quiksilver, Inc.'s corporate name to Boardriders, Inc.

28. No one at Quiksilver or Oaktree had ever seen or was aware of the "Rider" name or logo when Quiksilver decided to change its corporate name to "Boardriders."

29. Quiksilver, Inc. was formally renamed Boardriders, Inc. in March 2017.

30. By 2017, Mr. Agnes had decided that the prior TX Boardriders logo had unintended religious connotations for a global boardriding apparel company, given the

1. prominence of the crossed snowboards in front of the surfboards, and wanted to update the TX logo to accompany the corporate name change.

31. To accompany Quiksilver, Inc.'s name change to Boardriders, Inc., Pierre Agnes decided to refresh the Boardriders TX logo by moving the surfboards in front of the snowboards and adding a shaded circle, thus creating the "XT" logo, as follows:



32. Oaktree Capital did not approve or disapprove Mr. Agnes' decision to update the Boardriders TX logo to the XT logo.

33. No one at Boardriders or Oaktree had ever seen or was aware of the Rider logo when the XT logo was updated.

34. Boardriders, Inc. did not experience any increase in revenue due to the 2017 decisions to change the corporate name or update the Boardriders logo.

35. Boardriders IP Holdings, LLC is a wholly owned subsidiary of Boardriders, Inc.

36. No goods are available for sale at the Instagram account for the Boardriders store in Malibu, California.

37. Oaktree Capital is not involved in making the day-to-day business operations decisions at Boardriders, such as what to name the company, what marks to use, or how to market Boardriders' products.

38. Prior to Plaintiff's commencement of this litigation, no one at Boardriders was aware of Mr. Durbin, Plaintiff, its goods, its website, its social media accounts, and the "Rider" name, logos, or brand.

I declare under penalty of perjury under the laws of the State of California and the United States of America that the foregoing is true and correct.

Executed on June 25, 2020, in Los Angeles, California.

By: _____
David Tanner